IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELLE MARIE JOHNSON,    )
            )
      Plaintiff,    )
            )        6:15-CV-02284-JO
     v.       )
            )
NANCY A. BERRYHILL, Acting Commissioner )    OPINION AND ORDER
of Social Security,      )
            )
        Defendant.    )

JONES, J.,

Plaintiff Michelle Johnson appeals the Commissioner's decision denying her concurrent applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

Johnson alleged disability beginning July 1, 2009, due to blindness in one eye, epilepsy, Graves' disease, blood clot disorder, anemia, hypertension, and lupus. Admin. R. 103. She satisfied the insured status requirements under the Act through September 30, 2014, and must establish that she was disabled on or before that date to prevail on her Title II claim. *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

-1-   OPINION AND ORDER

The ALJ applied the sequential disability determination process described in the regulations and in *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found that Johnson's ability to work was adversely affected by encephalomalacia with a history of a cerebrovascular accident, seizure disorder, and a cognitive disorder with borderline intellectual functioning. Admin. R. 22-23. The ALJ found that, despite these impairments, Johnson retained the residual functional capacity ("RFC") to perform a range of light work involving simple, repetitive, routine tasks, in a structured work environment with predictable work goals, limited postural activities such as stooping, crawling, kneeling, and so forth, and limited exposure to hazards. Admin. R. 24-29.

The vocational expert testified that a person with Johnson's vocational factors and RFC could perform light, unskilled occupations such as garment sorter, linen folder, and tray setter which represent hundreds of thousands of jobs in the national economy. Admin. R. 30-31, 63-64. The ALJ concluded that Johnson was not disabled within the meaning of the Social Security Act. Admin. R. 31.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence may be less than a preponderance of the evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Under this standard, the court must consider the record as a whole, and uphold the Commissioner's factual findings that are supported by inferences reasonably drawn from the evidence even if another interpretation is also

rational. *Robbins*, 466 F.3d at 882; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039 –40 (9th Cir. 1995).

## ASSIGNMENTS OF ERROR

The claimant bears the burden of showing that the ALJ erred and that any error was harmful. *McLeod v. Astrue*, 640 F.3d 881, 886-87 (9th Cir. 2011). Johnson contends the ALJ erred by discrediting her subjective statements, discounting the opinion of Richard LaFrance, M.D., and rejecting the lay witness statements of her stepfather, Stefan Jones. She contends these errors led the ALJ to elicit testimony from the vocational expert with hypothetical assumptions that did not accurately reflect all of her functional limitations and to erroneously conclude that she is not disabled.

## DISCUSSION

### I.   Credibility Determination

In her application papers, Johnson said her ability to work was limited by seizures, inability to remember or comprehend, extreme fatigue, nausea, dizziness, vomiting, lupus, anemia, and being in and out of the hospital. Admin. R. 216, 221-22. In her hearing testimony, Johnson said that she had a stroke in 2007 and began taking anticoagulation medications. She began to have seizures in July 2009 which corresponds to the alleged onset of her disability. Admin. R. 25, 50-51. She said she was unable to work because she had difficulty speaking and thinking and could never tell when she would have a seizure. Johnson said her anticonvulsant medications limited her grand mal seizures but she continued to have them two or three times a month. She continued to experience smaller seizure episodes a few times a week. Admin. R. 25, 52, 60.

The ALJ said that Johnson's medically determinable impairments could reasonably be expected to cause some of the symptoms she alleged and he did not identify affirmative evidence of malingering. Admin. R. 25. Under such circumstances, an ALJ must assess the credibility of the claimant regarding the severity of symptoms. An adverse credibility determination must include specific findings supported by substantial evidence and clear and convincing reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tomasetti v. Astrue*, 533 F.3d at 1039.

In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186, at *5.

The ALJ's decision demonstrates that he considered all the evidence relating to proper factors for evaluating credibility. Contrary to Johnson's allegation of impairments from hypertension, Graves' disease, a blood clotting disorder, and anemia, the ALJ found that the medical records showed these conditions were controlled by treatment. Admin. R. 23. The record reflects that Johnson has an antiphospholipid antibody syndrome causing a hypercoagulable state for which she has had chronic Coumadin therapy. She experienced a pulmonary embolism in March 2006 and a cerebrovascular accident (stroke) in April 2007. After undergoing rehabilitation, Johnson returned

-4-    OPINION AND ORDER

to work for over two years, earning about the same income she earned before the stroke. Admin. R. 25. She underwent radiation therapy for Graves' disease and takes chronic thyroid replacement for hypothyroidism. Johnson failed to show that these conditions cause functional limitations despite treatment. The ALJ properly found that these conditions did not adversely impact Johnson's ability to perform basic work activities. Admin. R. 23. *See Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006) (Impairments that are effectively controlled by treatment are not disabling).

In addition, contrary to Johnson's allegation of limitations from lupus and blindness in one eye, the medical records show insufficient diagnostic findings and no treatment for these conditions. The ALJ properly concluded that Johnson had failed to establish that these conditions had been medically determined. Admin. R. 23.

The medical evidence supports a seizure disorder throughout the period for which Johnson alleges disability. The ALJ found, however, that Johnson's treatment records did not support the frequency, severity or limiting effects she alleged. Admin. R. 26. Contrary to Johnson's claim that she experienced grand mal seizures several times a month and small seizures several times a week, the ALJ identified long gaps between reported seizures in the treatment records. Admin. R. 26. In addition, the ALJ correctly observed that Johnson's reported seizures often coincided with periods of noncompliance with treatment and that she generally failed to follow medical advice. Admin. R. 27. These reasons for discounting Johnson's credibility are amply supported by the record.

Johnson's seizures began in July 2009 when she was awakened by a general tonic clonic grand mal seizure followed by postictal fatigue, inability to awaken, and confusion. Her postictal symptoms abated, however, and the emergency department staff found her neurologically intact and

essentially asymptomatic.  Admin. R. 453-54.  Her doctor began anticonvulsant medications and instructed her to prioritize this and ongoing treatment with Coumadin in her budget.  Admin. R. 283-84.

Johnson next reported a seizure in October 2009.  She returned to the emergency room reporting she had experienced two seizures in one day with a one-hour postictal period and a severe headache.  Labs showed that her anticonvulsant medication level was low, and her prescription dosage was increased.  Admin. R. 281, 367, 373-74.

In November 2009, Johnson returned to the emergency room following two seizures in the morning with expressive aphasia and difficulty following exact commands.  She said she was compliant with her prescriptions, but her blood levels of anticonvulsant medication, Coumadin, and thyroid replacement were all low and she had THC and barbiturates in her toxicology report.  Johnson's mother said she had been doing well without seizures for several weeks.  When she was discharged, Johnson had returned completely to her neurological baseline.  Admin. R. 267, 458, 460, 607.  Contemporaneous notes from a follow up with her anticoagulation clinic suggest suspicion of poor adherence to her medication regimen.  Admin. R. 607.

In December 2009, Dr. LaFrance, a neurologist, began following Johnson's seizure disorder.  Johnson told him that she had a daily headache and that her anticonvulsant medication made her feel off balance and cognitively slowed.  On examination, her physical and neurological findings were normal.  Dr. LaFrance changed her anticonvulsant medication to Keppra to minimize side effects.  Admin. R. 414-416

In late January 2010, Johnson reported no new seizures.  Dr. LaFrance noted fluctuations in her medication levels due to misunderstanding the doses.  Objective findings were normal.  Admin.

R. 428. In March 2010, Johnson told Dr. LaFrance she was doing well, without seizures. His physical and neurological findings were normal. Admin. R. 426. In May 2010, Johnson told her primary care doctor that she had been seizure free for six months. Admin. R. 279. In July 2010, she told Dr. LaFrance she was doing well without seizure activity or adverse effects from her medications. Admin. R. 424. In December 2010, Johnson reported having two seizures in quick succession. She admitted to Dr. LaFrance that she missed her medication doses periodically. Dr. LaFrance increased her Keppra dosage. Admin. R. 422. Johnson's primary care doctor noted that "occasional medication noncompliance and fatigue were likely the cause" of her recent seizures. She also urged better compliance with all her medications and counseled Johnson to stop using marijuana. Admin. R. 277.

In February 2011, Johnson's anticoagulation clinic noted a great deal of concern regarding Johnson's noncompliance with medications, missing appointments, and failing to return calls to the clinic. Admin. R. 346.

In May 2012, Johnson returned to the emergency room following a seizure, but felt fine by the time she arrived. Ambulance personnel said she responded to all their questions appropriately at the scene. Johnson reported she had experienced a seizure two months previously and two days previously. Admin. R. 462-463. In follow up, Dr. LaFrance added carbamazepine, another anticonvulsant, to Johnson's treatment regimen with Keppra. Admin. R. 421. In July 2012, the month Johnson filed her disability claims, Dr. LaFrance noted that the new regimen gave her good seizure control. Admin. R. 418.

In August 2012, however, Johnson's mother reported that Johnson was acting out of character since the addition of carbamazepine. Johnson was having suicidal ideation and reported

-7-    OPINION AND ORDER

to the emergency room. Lab work showed her thyroid replacement medication was out of the therapeutic range. Admin. R. 467, 665. Johnson later admitted to Dr. LaFrance that she had used methamphetamine two days before going to the emergency room. She appeared to be in good spirits, without depression, paranoia or suicidal ideation. Dr. LaFrance discontinued the carbamazepine and added Lamictal to her treatment with Keppra. Admin. R. 667-69. In October 2012, Johnson had a detailed neurological consultation by John Ellision, M.D. Dr. Ellison noted that her seizure disorder appeared to be under control with her latest medication change. Admin. R. 448. Later that month, Johnson told Dr. LaFrance she had experienced no seizure activity since the change in medications and labs showed that her medications were in the proper therapeutic range. Admin. R. 660-63.

On October 24, 2012, Johnson went to the emergency room reporting a seizure associated with chest tightness, but she had returned to her baseline by the time she arrived at the hospital. Her objective findings were essentially normal. Lab tests of her medication levels were ordered, but the results do not appear in the record. Admin. R. 470.

In February 2013, Johnson told her primary care doctor that she had not had a seizure for a long time, although she thought she might have had one in her sleep recently. Her physical examination and neurological findings were normal. Admin. R. 546. In April 2013, Dr. LaFrance indicated that "after starting Keppra and Lamictal she has been seizure free and doing well." Admin. R. 649. Labs showed that her anticonvulsant medications were in the therapeutic range. Admin. R. 653-54. Dr. LaFrance reminded her that her blood tests showed medications in the good range when she took them regularly as prescribed. Admin. R. 647. In October 2013, Dr. LaFrance said she was still free of grand mal seizures, but continued to report breakthrough partial seizures. He planned to increase her Lamictal dosage. Admin. R. 639-40.

-8-    OPINION AND ORDER

These treatment records provide substantial support for the ALJ's conclusion that Johnson's seizures occurred much less frequently and were much less severe than she alleged. Admin. R. 26. Such conflicts between a claimant's subjective complaints and the objective medical evidence constitute specific and substantial reasons that undermine the claimant's credibility. *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).

The record also supports the ALJ's conclusion that Johnson was often noncompliant treatment and disregarded medical advice to stop using marijuana. Admin. R. 27. When a claimant makes subjective statements about disabling symptoms, but fails to comply with prescribed treatment and recommendations, an ALJ may reasonably find the subjective statements unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Tonapetyan v. Halter,* 242 F.3d 1144, 1147-48 (9th Cir. 2001).

The ALJ also noted that Johnson engaged in daily activities that led him to question the credibility of her alleged limitations. Johnson was able to live alone with her four children, perform household chores, read, watch movies, do crossword puzzles, help with homework, go on walks, attend church, and maintain social relationships. Admin. R. 27, 53-57, 446, 560. While these activities are quite limited and not equivalent to the requirements of work, they can reasonably be viewed as inconsistent with her alleged inability to speak, think, comprehend, remember, or engage in activities due to extreme fatigue.

Finally, the ALJ noted that Johnson had a meager work history predating her alleged disability which led him to think she had reasons other than her medical condition for not working. Admin. R. 27. When a person chooses not to work for reasons unrelated to disability, it may reasonably cast doubt on a subsequent claim that she cannot work due to a disabling medical

condition. *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001).

The ALJ articulated clear and convincing reasons for his adverse credibility determination and his findings are supported by substantial evidence. *Carmickle*, 533 F.3d at 1160; *Smolen v. Chater*, 80 F.3d at 1281-82. His findings are sufficiently specific to satisfy me that he did not arbitrarily discredit Johnson's subjective statements. *Tomasetti v. Astrue*, 533 F.3d at 1039.

## II.  Opinion of Dr. LaFrance

Johnson contends the ALJ improperly discounted the opinion of Dr. LaFrance. As described previously, Dr. LaFrance began following Johnson's seizure disorder in December 2009 and had intermittent contact with her thereafter. His treatment notes have been adequately described for the present purposes.

On October 17, 2012, Dr. LaFrance completed a Seizures Residual Functional Capacity Questionnaire. Dr. LaFrance indicated that Johnson experienced monthly seizures typically lasting ten minutes with postictal symptoms lasting up to 24 hours. He said that, following a seizure, Johnson was unable to care for herself or others. He said she suffered from medication side effects, including lethargy, lack of alertness, and diminished cognition. Dr. LaFrance opined that Johnson would be likely to disrupt coworkers, would require extra supervision, and would need unscheduled one-hour breaks on a daily basis. He said Johnson would miss work three to four times a month as a result of her seizure disorder. Admin. R. 522-25.

The ALJ gave Dr. LaFrance's questionnaire little weight in his decision. Admin. R. 28. An ALJ can reject an examining physician's opinion that is inconsistent with the opinions of other physicians, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002)

quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An uncontradicted opinion may be rejected for clear and convincing reasons. *Thomas*, 278 F.3d at 956-57. Here, Dr. LaFrance's opinion is not entirely consistent with that of Dr. Ellison or those of the agency reviewing experts. In any event, the ALJ's reasoning was adequate under either standard.

The ALJ found Dr. LaFrance's opinion of Johnson's limitations inconsistent with his own treatment records and the record as a whole. Admin. R. 28. The treatment history described previously reflects that Johnson experienced seizures much less frequently than Dr. LaFrance indicated, particularly when she was compliant with her prescribed medications. Contrary to Dr. LaFrance's opinion, her postictal symptoms generally abated quickly after her seizures and she was often asymptomatic by the time she was seen for medical treatment. Contrary to his opinion that she has ongoing side effects from her medications, the records reflect that she reported side effects only during the brief time she was taking carbamazepine and admitted contemporaneously using illicit drugs. Dr. LaFrance then adjusted her regimen and she denied side effects thereafter. Dr. LaFrance did not identify any basis for his opinion that Johnson would miss work frequently or require unscheduled breaks on a daily basis. An ALJ need not accept a medical opinion that is unsupported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may properly discount a medical opinion that is conclusory, in abbreviated form, and unsupported by objective evidence or supporting rationale. *Batson*, 359 F.3d at 1195. In the absence of supporting findings and rationale, it is reasonable to infer that Dr. LaFrance premised his opinion on Johnson's subjective reports. An ALJ is entitled to reject a medical opinion that is premised primarily on subjective complaints that the ALJ found unreliable. *Tonapetyan v. Halter*, 242 F.3d at 1149.

-11-    OPINION AND ORDER

### III.    Lay Witness Statement

Johnson contends the ALJ improperly discounted the lay witness statements of her stepfather Stefan Jones. Jones testified at Johnson's administrative hearing regarding her seizure disorder. He said he thought Johnson was taking her medications regularly, but did not know. He said he thought Johnson was having grand mal seizures two or three times a week based on his observations during a four-day period when she stayed at his house. He said he had not witnessed any small seizures. Jones said that Johnson visited about one day a week, but did not stay at his house for an entire week very often. Admin. R. 67-69.

The ALJ did not discredit Jones's testimony regarding his personal observation of two seizures during the four-day period while Johnson stayed at his house. Regarding Jones's testimony about the frequency of Johnson's seizures and her compliance with medications, the ALJ found he lacked personal knowledge. The ALJ therefore discounted Jones's testimony that Johnson was compliant with medications, that she experienced two to three grand mal seizures a week, and that she continued to have frequent small seizures. The ALJ concluded that Jones's testimony did not support greater limitations than those in the RFC assessment. Admin. R. 29.

An ALJ must consider the testimony of a lay witness, but may discount it for reasons germane to the witness. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). The ALJ's reasons must be supported by substantial evidence, but may appear anywhere in the decision without being tied directly to the evaluation of the lay witness statement. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Here, the ALJ considered Jones's testimony and provided germane reasons to discount the portions he found unreliable. Additional germane reasoning supporting the ALJ's assessment of

Jones's testimony is evident elsewhere in the decision, including the ALJ's evaluation of Johnson's credibility and the questionnaire completed by Dr. LaFrance. *See Molina v. Astrue*, 674 F.3d 1104, 1117-18 (9th Cir. 2012) (ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to lay witness testimony describing the same limitations); *Lewis v. Apfel*, 236 F.3d at 512. Accordingly the ALJ did not erroneously ignore the lay evidence.

## IV.    Vocational Testimony

Johnson contends the ALJ elicited testimony from the VE with hypothetical assumptions that did not include all of the limitations described in her subjective statements, the opinion of Dr. LaFrance, and Jones's lay witness testimony. The ALJ elicited testimony from the VE based on hypothetical questions that accurately reflected his assessment of Johnson's RFC. The VE testified that jobs exist in the national economy that a person with the described RFC could perform. Admin. R. 63-64. Because I find no error in the ALJ's RFC assessment, the hypothetical limitations posed to the VE were also free of error, and the VE's testimony satisfied the Commissioner's burden to show there are jobs in the national economy that Johnson could perform. *Andrews v. Shalala*, 53 F.3d at 1043. The ALJ was not required to include additional hypothetical limitations he found unsupported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

### CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this ___16th___ day of March, 2017.

Robert E. Jones, Senior Judge
United States District Court

-13-    OPINION AND ORDER